**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aramark Sports & Entertainment Services Incorporated,<br><br>Plaintiff,<br><br>v.<br><br>Twin Anchors Marine Limited,<br><br>Defendant. | No. CV-14-08146-PCT-NVW<br><br>**ORDER** |

Before the court is Defendant Twin Anchors' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 41). For the reasons that follow, the Motion will be denied.

**I.   BACKGROUND**

Pursuant to a Houseboat Purchase Agreement ("Agreement") signed in December 2005, Twin Anchors Marine, Ltd. ("Twin Anchors") constructed and delivered to Aramark Sports and Entertainment Services, Inc. ("Aramark") six seventy-five-foot houseboats. (Doc. 37-1 at 3, 20). In the "Warranties" section of the Agreement, Twin Anchors warranted, among other things, that 1) "the Work shall be performed in accordance with the terms and conditions of this Agreement," 2) "the Houseboat shall be free from defects in design, workmanship and materials," and 3) "all Work will meet all applicable American Boat and Yacht Council standards as regulated and inspected by the National Marine Manufacturers Association, and the United States Coast Guard specifications and requirements applicable to houseboats." (*Id.* at 10-11.) The parties

agreed that the warranty for "defects in workmanship and materials" would "only extend for a period of one (1) year from the date of Final Delivery to ARAMARK." (*Id.* at 10.) The Agreement also contained the following "Indemnity" provision: "[Twin Anchors] agrees to defend, indemnify and hold ARAMARK, and its officers, directors, shareholders and affiliates, harmless from and against any and all lawsuits, causes of action, claims, liabilities, damages, losses, costs and expenses (including reasonable attorneys' fees and expenses), arising out of: (i) the negligent acts or omissions or the intentional misconduct of [Twin Anchors] in the performance of this Agreement … and (iii) any breach of this Agreement by [Twin Anchors]." (*Id.* at 13.)

On June 21, 2008, Robert Howeth rented one of Aramark's houseboats to use for a family vacation on Lake Powell. (Doc. 37 at 3.) While on board three days later, several members of Howeth's party experienced nausea, headaches, vomiting, and loss of consciousness; Glenn Howeth, Robert Howeth's brother, suffered a heart attack and died. (*Id.*) In July 2009, the other members of the Howeth party sued Aramark, Twin Anchors, and three other parties in federal district court in Utah, seeking damages for personal injury and wrongful death allegedly caused by a carbon monoxide leak aboard the houseboat. (*Id.* at 3-4.)

As part of that litigation, Twin Anchors filed an "Answer to Third Amended Complaint and Cross Claim and Notice of Allocation of Fault" ("Twin Anchors Answer") in May 2011. The Twin Anchors Answer states twenty-three defenses and, "[p]ursuant to Utah Code Annotated §78B-5-818, and otherwise as applicable under Utah substantive law and Local Rule 9-1," asserts "crossclaims for standing and any other purpose, as necessary to allocate fault" to the other four defendants. (Doc. 25-1 at 3-22.) Under the provision of Utah law cited by Twin Anchors, which is titled "Comparative negligence," the "fact finder may, and when requested by a party shall, allocate the percentage or proportion of fault attributable to each person seeking recovery, to each defendant, to any person immune from suit, and to any other person identified under

Subsection 78B-5-821(4) for whom there is a factual and legal basis to allocate fault." Utah Code Ann. § 78B-5-818(4)(a).

The Twin Anchors Answer explains why, in Twin Anchors' view, each of the other defendants should be held liable in lieu of Twin Anchors. For example, Twin Anchors argued that if "the death of Glenn Howeth and/or any injuries incurred by Plaintiffs . . . was caused, in whole or in part, by the leak of carbon monoxide from the [water separator] during the voyage or otherwise, the said leak was proximately caused by the failure of Aramark . . . to properly adjust the valve on the water discharge line." (Doc. 25-1 at 23.) The Twin Anchors Answer also asserts that, "In the event that Twin Anchors is held liable to any person or entity for any claim or cause of action arising from the subject incident or any damages alleged by Plaintiffs, it is entitled to an allocation of fault as against Aramark in accordance with applicable law." (*Id.* at 25.) Twin Anchors sought similar allocations of fault against all codefendants. Nowhere does the Twin Anchors Answer plead causes of action against Aramark or any other defendant.

Aramark filed an "Amended Answer of Defendants Aramark Corporation and Aramark Sports and Entertainment Services, LLC's to Plaintiffs' Third Amended Complaint, Counterclaim Against Robert Howeth, and Cross-Claim for Apportionment of Fault" ("Aramark Answer") on July 5, 2011. (Doc. 25-1 at 60.) In addition to asserting thirty-eight affirmative defenses, the Aramark Answer includes a counterclaim against Robert Howeth, seeking indemnification for any damages awarded against Aramark in the Utah litigation, pursuant to an indemnity clause in Howeth's rental agreement with Aramark. (*Id.* at 54-58.) The Aramark Answer also contains a clause, similar to that in the Twin Anchors Answer, declaring, "In the event that ARAMARK is held liable to any person or entity for any claim or cause of action arising from the subject incident or any damages alleged by the Plaintiffs, it is entitled [to] an allocation of fault against [the other defendants, including Twin Anchors] in accordance with

- 3 -

applicable law." (*Id.* at 60.) Like the Twin Anchors Answer, the Aramark Answer does not plead any causes of action against any co-defendants.

The Utah litigation settled in November 2011. (*Id.* at 72.) Under the settlement agreement, all defendants released any claims they might have against one another, with one exception: "Aramark and Twin Anchors specifically reserve all of their rights to assert an indemnification action pursuant to the [Agreement] between them, which rights are not being discharged by this [settlement agreement]." (*Id.* at 75.) Aramark then brought this action against Twin Anchors on August 18, 2014. (Doc. 1.) The First Amended Complaint (Doc. 37), filed January 7, 2015, seeks damages under the Agreement's indemnity provision for sums Aramark paid out in the Utah litigation. Specifically, Aramark claims Twin Anchors is responsible for those payments because (1) "Twin Anchors breached its contractual obligations to Aramark and delivered the [houseboat] with defects in its design, workmanship and materials, which did not meet the applicable standards," and (2) Twin Anchors "negligently designed, constructed, sold and failed to give warnings and/or instructions about the [houseboat], such that, unknown to Aramark, users and others, [carbon monoxide] was released under the houseboat, where it accumulated and then migrated into the living spaces." (Doc. 37 at 4-5.) In essence, Aramark's first cause of action seeks indemnification for Twin Anchors' breach of the warranties in the Agreement; the second seeks indemnification for general negligence in design and construction of the houseboat. At oral argument, counsel for Aramark conceded that these causes of action merely apply different labels to the same underlying facts.

Twin Anchors' Motion, filed February 4, 2015, urges dismissal of Aramark's First Amended Complaint on the grounds that it fails to state a claim upon which relief can be granted, as required by Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. STANDARD OF REVIEW

Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). On a motion to dismiss under Rule 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the non-moving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). The principle that a court accepts as true all of the allegations in a complaint, however, does not apply to legal conclusions or conclusory factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive, a claim must have "facial plausibility"—the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Finally, courts generally may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion. One exception, however, is that a court may take judicial notice of matters of public record under Federal Rule of Evidence 201. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). Courts do not have to accept alleged facts as true when they contradict those matters subject to judicial notice. *Sears, Roebuck & Co. v. Metro. Engraver, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956).

Twin Anchors alleges several deficiencies in the First Amended Complaint, which the court will consider in turn.

## III. NATURE OF FIRST CAUSE OF ACTION

Twin Anchors argues that Aramark's first cause of action, though couched as one for breach of the parties' indemnity provision, in reality alleges nothing more than breach of the underlying contractual warranties. The first cause of action, Twin Anchors contends, "is the same in substance as" breach-of-warranty claims that Aramark included in its original Complaint (Doc. 1) but has since dropped. (Doc. 43 at 8.) On Twin Anchors' view, that claim is therefore barred by the Utah settlement agreement, which

preserved only claims relating to the parties' "rights to assert an indemnification action pursuant to the [Agreement] between them." (Doc. 25-1 at 75.)

This argument misunderstands the nature of Aramark's claim. The "Warranties" and "Indemnity" sections of the Agreement secured to Aramark two different sets of contractual rights. The first set ensures that the boat delivered by Twin Anchors satisfies certain standards of workmanship and design. The second set ensures that, if Aramark is forced to pay damages resulting from deficiencies in design or construction of the houseboat, Aramark can obtain indemnification for those expenses from Twin Anchors. While the right to indemnification certainly presupposes and relies for its existence on the right to delivery of a defect-free houseboat, the two rights are analytically distinct. In this case, the first cause of action aims to vindicate only the second set of rights, not the first. Aramark is not suing for loss of value to the boat arising from the boat's failure to conform to the Agreement. Rather, Aramark is suing because defects in the houseboat's construction have allegedly forced Aramark to pay out settlement amounts for which Twin Anchors promised to provide compensation. Such a claim is permitted by the plain language of both the parties' Agreement and their settlement agreement.

**IV.   STATUTE OF LIMITATIONS FOR FIRST CAUSE OF ACTION**

Even if not precluded by the settlement agreement, Twin Anchors contends that the first cause of action is untimely under Arizona law, which governs this diversity action. Additionally, the Agreement contains a choice-of-law provision in favor of Arizona law. (Doc. 37-1 at 17.) Twin Anchors points to Arizona's statute of limitations for sales contract disputes in the Uniform Commercial Code, which provides, "An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." A.R.S. § 47-2725(A). The statute further specifies that a "cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and

discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." *Id.* § 47-2725(B). Because the first cause of action is merely a breach-of-warranty claim disguised as an indemnity claim, and because the boat was delivered to Aramark in 2006, Twin Anchors maintains that even the original Complaint, filed in August 2014, does not satisfy the relevant statute of limitations.[1]

For the reasons outlined above, this argument must fail. Aramark's first cause of action requests damages for breach of the indemnity provision, not breach of the underlying warranties. The four-year limitations period in § 47-2725(A) therefore begins to run from the date when Aramark's indemnification claim accrued, rather than the date on which Twin Anchors delivered the houseboat. Arizona law is clear that the "right to indemnity 'exists when there is a legal obligation on the indemnitee to pay or a sum is paid by him for which the indemnitor should make reimbursement.'" *Payless Shoesource, Inc. v. Pac. Emplr. Ins. Co.*, No. CV-08-2317-PHX-DGC, 2009 WL 4439267, at *4, 2009 U.S. Dist. LEXIS 110309, at *12 (D. Ariz. Nov. 24, 2009) (quoting *INA Ins. Co. of N. Am. v. Valley Forge Ins. Co.*, 150 Ariz. 248, 253, 722 P.2d 975, 980 (Ct. App. 1986)). Such "'an obligation or sum cannot be imposed solely by a third-party's unproven allegations against the indemnity parties[.]' An indemnity claim therefore accrues only when liability is established or when an indemnitee actually pays a sum to discharge potential liability." *Id.* (alteration in original) (citing *INA Ins. Co.*, 150 Ariz. at 253, 722 P.2d at 980; *MT Builders, L.L.C. v. Fisher Roofing, Inc.*, 219 Ariz. 297, 303, 197 P.3d 758, 764 (Ct. App. 2008)). No liability was ever established in the Utah litigation, as the parties settled out of court. As a result, Aramark's indemnity claim accrued no earlier than the date on which Aramark, by signing the settlement agreement, first incurred a "legal obligation . . . to pay" other parties to the Utah litigation. The

---

[1] Aramark contends this action is governed by A.R.S. § 12-548, Arizona's six-year statute of limitations for breach of a written contract. The court need not resolve this, as any claim that satisfies the four-year statute of § 47-2725(A) must also satisfy § 12-548.

- 7 -

Complaint was filed less than four years after the Utah litigation settled and is therefore timely.

Twin Anchors attempts to escape this result by arguing, once again, that Aramark's first cause of action is one for breach of warranty instead of contractual indemnity. The principal support offered for Twin Anchors' reading of A.R.S. § 47-2725(A), (B) is the Utah Supreme Court's opinion in *Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214 (Utah 1984). There the court acknowledged the "general rule" that "a cause of action for indemnity does not arise until the liability of the party seeking indemnity results in his damage, either through payment of a sum clearly owed or through the injured party's obtaining an enforceable judgment." 681 P.2d at 218. But based on its "absolute language," the court construed Utah Ann. Code § 70A-2-725(1), (2)—which is identical to A.R.S. § 47-2725(A), (B)—as a "statute of repose" that "set[s] a designated event for the statutory period to start running and then provide[s] that at the expiration of the period any cause of action is barred regardless of usual reasons for 'tolling' the statute." *Id.* at 218-19 (alterations in original) (quoting Restatement (Second) of Torts § 899 cmt. g (1979)). The Utah Supreme Court concluded that "the language of § 70A-2-725 gives repose from all actions based on breach of warranty that are brought more than four years after the tender of delivery of the goods." *Id.* at 219. Therefore, the court held, "A specific statutory limitation period that seeks ultimate repose of causes of action will control over a general statute of limitations, even to cut off an indemnity action that technically has not accrued." *Id.* at 218.

As an initial matter, *Perry* is distinguishable from the instant case because the parties in *Perry* do not appear to have specifically agreed to an indemnity provision as part of their written contract. *See id.* at 216 ("Even if this were an action on a written contract, which third-party defendants dispute, the trial court was correct in rejecting the application of this general statute of limitations."). Instead, the third-party plaintiff's claim was one for equitable indemnity. *See id.* at 218 (listing elements of which "courts universally require proof" in indemnity actions). Here, by contrast, the parties expressly

- 8 -

1 stipulated in their Agreement that Twin Anchors would indemnify Aramark for "losses
2 . . . arising out of . . . any breach of this Agreement by [Twin Anchors]." (Doc. 37-1 at
3 13.) The Agreement did not provide that the right to indemnification would be cut off as
4 soon as the statute of limitations on the underlying contractual warranties lapsed. Such
5 unambiguous contractual language cannot be defeated by vague reference to "a
6 legislative intent that all actions based on breach of contract for the sale of goods be
7 brought, if at all, within four years of the tender of delivery." *Perry*, 681 P.2d at 219.
8 Moreover, even in the context of an "implied indemnity claim," some courts have held
9 that if the Uniform Commercial Code's four-year statute of limitations for "breach of any
10 contract for sale" is applicable, it begins to run on the date an "indemnity action[]
11 accrue[s]"—i.e., "when the party seeking indemnity pays or is legally adjudged obligated
12 to pay damages to a third party." *Cent. Wash. Refrigeration, Inc. v. Barbee*, 133 Wash.
13 2d 509, 516-17, 946 P.2d 760, 764-65 (1997). The reason for this rule is simple:
14 "Indemnity actions are distinct, separate causes of action from the underlying wrong and
15 are governed by separate statutes of limitations." *Id.* at 517, 946 P.2d at 764.

16 Moreover, this court is not persuaded by the *Perry* rationale. The Utah Supreme
17 Court appears to have made the same mistake as Twin Anchors, overlooking the
18 conceptual difference between a right to defect-free goods and a right to be indemnified
19 for losses arising out of defective goods. With respect to the Utah equivalent of A.R.S.
20 § 47-2725(A), (B), that court reasoned, "The action *must* be commenced within four
21 years after the action accrues, and a cause of action for breach of warranty accrues when
22 tender of delivery is made, 'regardless of the aggrieved party's lack of knowledge of the
23 breach.' By its terms, this provision appears to override the general rule regarding
24 indemnity actions." *Perry*, 681 P.2d at 218 (emphasis in original). "By its terms," this
25 provision does require "a cause of action for *breach of warranty*" to "be commenced
26 within four years after the action accrues" (emphasis added). But nothing in the statute
27 suggests an intent to remove indemnity actions from the blanket rule that an action must
28 be brought no more than four years after that action itself accrues. As explained above,

Aramark's first claim is not a cause of action for breach of warranty. It is a cause of action for breach of contractual indemnity—although, to be sure, the latter breach in these circumstances can exist only by virtue of the former. The gravamen of Aramark's complaint is not that the houseboat in question does not work properly, thereby requiring repairs or causing loss of use. Aramark complains instead that Twin Anchors' failure to deliver a proper boat compelled Aramark to settle with the Utah plaintiffs, and Twin Anchors has refused to reimburse that loss. Accordingly, the typical rule for accrual of indemnity claims should apply to this dispute.

The parties have not cited, and the court has not found, any Arizona case requiring a different result. Absent an indication that Arizona courts would permit Twin Anchors to avoid its contractual obligations by too-cleverly rebranding Aramark's claims, the plain language of the Agreement must prevail. Moreover, Arizona courts "disfavor statute of limitations defenses, preferring instead to resolve litigation on the merits when possible." *City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, 178, 181 P.3d 219, 225 (Ct. App. 2008). Nothing in this case makes resolution on the merits impossible.

### V.    THERE IS NO COMPULSORY CROSSCLAIM, NOT IN GENERAL AND CERTAINLY NOT HERE

Twin Anchors next contends that Aramark's claim for contractual indemnification is barred because that claim "was a mandatory cross-claim that should have been asserted during the wrongful death litigation." (Doc. 41 at 12.) Utah statute permits the fact-finder to apportion fault "to each person seeking recovery, to each defendant, to any person immune from suit, and to any other person identified under Subsection 78B-5-821(4) for whom there is a factual and legal basis to allocate fault." Utah Code Ann. § 78B-5-818(4)(a). In their Answers, both Twin Anchors and Aramark sought such allocations of fault against each other. Twin Anchors labeled its Answer as a "Cross Claim and Notice of Allocation of Fault" and alleged it "hereby gives notice, and crossclaims for standing and any other proper purpose, as necessary to allocate fault to

1  each of the following parties . . . ."  (Doc. 25-1 at 2, 22.)  Aramark similarly labeled its
2  Answer as a "Cross-Claim for Apportionment of Fault" and alleged "it is entitled [to] an
3  allocation of fault against" codefendants, including Twin Anchors.  (Doc. 25-1 at 29, 60.)
4  Neither party pleaded any contractual indemnity rights or obligations.  Twin Anchors
5  contends Aramark's failure to litigate its indemnity claim against Twin Anchors in the
6  Utah case bars it from litigating that claim later in another court.  That is wrong for many
7  reasons.

8  First, a counterclaim is compulsory only if the original action ends in adjudication.
9  *See* Restatement (Second) of Judgments § 22 (1982) ("A defendant who may interpose a
10  claim as a counterclaim in an action but fails to do so is precluded, *after the rendition of*
11  *judgment* in that action, from maintaining an action on the claim if: (a) The counterclaim
12  is required to be interposed by a compulsory counterclaim statute or rule of court[.]"
13  (emphasis added)).  The adjudication precludes later assertion of an omitted compulsory
14  counterclaim.  The Utah case did not end in adjudication; it was settled and dismissed.
15  Twin Anchors' strange view of compulsory counterclaims would bar an unasserted
16  compulsory counterclaim in a dismissed action that plainly would not even bar the
17  primary claim itself.  This through-the-looking-glass world of preclusive effects from
18  non-adjudication is the opposite of the legal world in which we live.

19  Second, in their settlement of the Utah case, the parties expressly preserved "all of
20  their rights to assert an indemnification action pursuant to" the Agreement.  (Doc. 25-1 at
21  75.)  Even where general principles of preclusion would apply, the parties may expressly
22  agree otherwise.  They did exactly that here.

23  Third, the compulsory counterclaim obligation in Rule 13(a)(1) of the Federal
24  Rules of Civil Procedure does not apply to crossclaims under Rule 13(g).  Rule 13(a)(1)
25  provides in part that a "pleading must state as a counterclaim any claim that—at the time
26  of its service—the pleader has against an opposing party if the claim: (A) arises out of the
27  transaction or occurrence that is the subject matter of the opposing party's claim."  But
28  the crossclaim rule is explicitly permissive: "A pleading *may* state as a crossclaim any

claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim." Fed. R. Civ. P. 13(g) (emphasis added).

The Ninth Circuit has never held that one coparty's Rule 13(g) crossclaim converts another coparty into an "opposing party" under Rule 13(a), requiring a compulsory crossclaim back against the original crossclaimant. Twin Anchors relies on a dictum in *Mitchell v. CB Richard Ellis Long Term Disability Plan*, 611 F.3d 1192 (9th Cir. 2010). In that case, one of two codefendant insurers, UNUM, filed a crossclaim against the other, MetLife, seeking indemnification from MetLife if UNUM was found liable to the plaintiff. 611 F.3d at 1198. MetLife did not file a parallel crossclaim for indemnity against UNUM. *Id.* The district court entered judgment in favor of the plaintiff against MetLife, not UNUM, and dismissed UNUM's crossclaim for indemnity as moot. *Id.* For the first time on appeal, MetLife argued the district court should have adjudicated MetLife's unpled right to indemnification from UNUM. *See id.* at 1201. The Ninth Circuit demurred, holding, "Because MetLife failed to assert a cross-claim against UNUM for indemnification, the district court did not err by failing to address such a claim." *Id.* MetLife "cannot now complain that the district court failed to resolve a claim that was not even before it. MetLife, moreover, failed to even appeal the district court's grant of declaratory judgment in favor of UNUM, so neither claim is properly before us on appeal." *Id.* That disposed of the issue.

But the Ninth Circuit then added in summary dictum, "Any claim by MetLife for indemnification against UNUM would have been compulsory under Federal Rule of Civil Procedure 13(a)" because "UNUM's cross-complaint requesting declaratory relief and indemnification arose out of the same transaction as Mitchell's amended complaint against MetLife and UNUM." *Id.* That dictum is neither binding nor persuasive. *See City of Colton v. Am. Promotional Events*, 2010 WL 4569038, at *7 n.4, 2010 U.S. Dist.

- 12 -

LEXIS 123744, at *19 n.4 (C.D. Cal. Nov. 2, 2010) (interpreting *Mitchell* analysis of Rule 13 as "dicta that had little, if not no, relevance to the Ninth Circuit's decision").[2]

This court is not persuaded there can ever be a compulsory crossclaim. Reading bright-line rules according to their plain language allows litigants to reduce the uncertainty inherent in complex litigation. Rule 13(g) plainly makes crossclaims permissive, not compulsory. Litigants should be able to rely on that clear language. A coparty who wants an adjudication on any issue permissible under Rule 13(g) can plead it himself and insist it be decided. It is neither necessary nor fair to trap a coparty into forfeiture of an unripe indemnity claim that the first coparty did not care to plead.

Fourth, even the circumstances that some courts have found to trigger compulsory crossclaims are not present here. Some courts have held or assumed that "co-parties become opposing parties within the meaning of Rule 13(a) after one party pleads a crossclaim against the other" if "the initial cross-claim includes a substantive claim (as opposed to merely a claim for contribution and indemnity)." *Rainbow Mgmt. Grp. v. Atlantis Submarines Haw., L.P.*, 158 F.R.D. 656, 659-60 (D. Haw. 1994). *See also City of Colton*, 2010 WL 4569038, at *6, 2010 U.S. Dist. LEXIS 123744, at *18 ("[A] party to a cross-claim does not become an 'opposing party' within the meaning of Rule 13(a)—thereby requiring the compulsory assertion of a counterclaim—unless the claim asserted is 'substantive.'"); *accord Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 146 n.11 (3d Cir. 1999) ("[W]e suspect that a compulsory cross-claim rule would be limited to situations in which the initial cross-claim included a substantive claim, as opposed to claims for contribution and indemnity, in order to avoid needless complication of litigation.").

---

[2] Twin Anchors also cites *Polimaster Ltd. v. RAE Systems*, 623 F.3d 832 (9th Cir. 2010), where the Ninth Circuit, in a parenthetical included in a string citation, quotes an Eastern District of Pennsylvania court for the proposition that "Any party asserting a claim, whether an original claim, counterclaim, cross-claim or third-party claim, becomes an opposing party to the party sued." 623 F.3d at 839. *Polimaster* did not involve crossclaims at all, and the quoted sentence is as obviously dictum as the discussion of Rule 13 in *Mitchell*.

1  Even if the court agreed that crossclaims can sometimes be compulsory, that rule
2  could not apply here because Twin Anchors did not file a "substantive" crossclaim
3  against Aramark.  Alleging that another party is exclusively liable for any damage does
4  not assert a claim against that party.  The Utah law pursuant to which Twin Anchors
5  brought its "crossclaim" requires only a notice; no pleading is necessary.  Even assuming
6  that notice—which a defendant may include in its answer alone—can be transformed into
7  a crossclaim by calling it one, it still does not plead a "substantive" claim, or any claim,
8  against Aramark.  Indeed, Twin Anchors argues here for preclusion by omission of the
9  very type of claim—indemity—that *Rainbow Management Group* and other cases say
10 would not be precluded by the rule they advance.

11  Fifth, Twin Anchors did not file a permissible crossclaim at all.  Although they
12 dressed up their filings with the Utah federal court as "crossclaims," neither party pled
13 any claims for any kind of relief against the other—damages, an injunction, or even a
14 declaratory judgment.  Mislabeling a non-claim as a crossclaim does not make it so, not
15 for compulsory counterclaim purposes or any other purpose.

16  Sixth, a rule of compulsory crossclaims could not apply to contractual indemnity
17 that has not yet been paid or adjudged.  Rule 13(a)(1), the compulsory counterclaim rule
18 that Twin Anchors would read into rule 13(g),  requires a party to plead only those claims
19 "that—*at the time of its service*—the pleader has against an opposing party."  Fed. R.
20 Civ. P. 13(a)(1) (emphasis added).  As explained above, a claim for contractual
21 indemnity "accrues only when liability is established or when an indemnitee actually
22 pays a sum to discharge potential liability."  *Payless Shoesource*, 2009 WL 4439267, at
23 *4, 2009 U.S. Dist. LEXIS 110309, at *12.  Aramark's claim for contractual indemnity
24 had not accrued when it served its pleading and did not accrue until execution of the
25 parties' settlement agreement in November 2011.  It could not be a compulsory
26 crossclaim on any view.

27  Aramark's failure to assert contractual indemnification in the Utah litigation does
28 not prohibit raising that claim here.  More could be said, but six reasons are enough.

- 14 -

## VI. STATUTE OF LIMITATIONS FOR SECOND CAUSE OF ACTION

Finally, Twin Anchors requests dismissal of Aramark's second cause of action on the grounds that it is untimely under Arizona's four-year statute of limitations for contract claims. A.R.S. § 47-2725(A). The court has previously explained that under Arizona law, a cause of action for indemnity "accrues only when liability is established or when an indemnitee actually pays a sum to discharge potential liability." *Payless Shoesource*, 2009 WL 4439267, at *4, 2009 U.S. Dist. LEXIS 110309, at *12. Because Aramark discharged its liability to the Utah plaintiffs no earlier than November 2011, the original August 18, 2014 Complaint was timely.

Twin Anchors attempts to circumvent this clear rule by noting that "Aramark threatened to seek damages for the Howeth suit from Twin Anchors in 2008." (Doc. 43 at 13.) Twin Anchors cites no authority for the proposition that a cause of action accrues as soon as a party communicates its intention to assert that cause of action in the future. Aramark's second cause of action is not barred by the four-year limit of A.R.S. § 47-2725(A).

IT IS THEREFORE ORDERED that Defendant Twin Anchors' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 41) is denied.

Dated this 20th day of April, 2015.

_____
Neil V. Wake
United States District Judge

- 15 -